IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20 CV 13 MR WCM

| | | |
|---|---|---|
| SOUTHERN POWER COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM AND |
| v. | ) | RECOMMENDATION |
| | ) | |
| CLEVELAND COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on a Motion to Dismiss filed by Defendant Cleveland County (the "Motion to Dismiss," Doc. 29), which has been referred to the undersigned pursuant to 28 U.S.C. § 636. The Motion to Dismiss is fully briefed and is ripe for ruling. Docs. 30, 32, 37.

I. **Procedural Background**

On January 14, 2020, Southern Power Company ("SPC") filed its original Complaint against Cleveland County (the "County").

On July 29, 2020, with leave of court, SPC filed an Amended Complaint. Doc. 25. SPC seeks a declaration that a July 24, 2007 Incentive and Development Agreement (the "Agreement") with the County is a valid and enforceable contract.

1

On August 19, 2020, the County filed the instant Motion to Dismiss seeking dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. SPC has responded, and the County has replied. Docs. 32 & 37.

## II.  Factual Background

SPC alleges that in the early 2000s, it identified Cleveland County as a potentially attractive location for a new gas-fired power plant, and initiated discussions with County officials about whether the County would offer economic incentives to facilitate the project. Doc. 25 at ¶ 10.

After a period of negotiation, the parties agreed upon the key terms of the Agreement, which  SPC describes as  being "structured as a common unilateral contract: SPC would not be obligated to build a plant in Cleveland County, and the County would owe no incentive payments to SPC unless SPC did build a plant." Doc. 25 at ¶ 15.

The Agreement was approved by the Cleveland County Board of Commissioners following a public hearing on July 24, 2007 and representatives of the County and SPC executed the Agreement that same day. Doc. 25 at ¶¶ 19-34.

SPC alleges that "[i]n August 2007, after the parties entered into the Incentive Agreement, the General Assembly amended North Carolina's Local Development Act to add N.C. Ge. Stat. § 158-7.1(h), which imposes certain

2

requirements on economic development agreements between private enterprises and local governments to ensure that private enterprises honor their promises." Doc. 25 at ¶ 38.

SPC further alleges that following this amendment, on January 6, 2009, the County confirmed that the Agreement complied with the requirements of Section 158-7.1(h) "by affirming by a unanimous vote of the then Board, that the County remained contractually committed to its obligations in the Incentive Agreement." Doc. 25 at ¶ 39; see also Doc. 25 at ¶¶ 40-45.

SPC then constructed "Plant Cleveland," which began commercial operations in December 2012. Doc. 25 at ¶ 48.

SPC contends that no later than a January 2013 commissioning ceremony, the County understood that SPC had "satisfied the criteria in the Incentive Agreement to trigger annual incentive payments from the County." Doc. 25 at ¶¶ 51 & 68. However, SPC alleges that the County has "refused to make any incentive payments to SPC." Doc. 25 at ¶ 69.

## III.  Legal Standards

### A. Rule 12(b)(1)

A motion to dismiss based on Rule 12(b)(1) of the Federal Rules of Civil Procedure addresses whether the court has subject-matter jurisdiction to hear the dispute. See Fed. R. Civ. P. 12(b)(1). A dismissal for lack of subject matter jurisdiction should be without prejudice, since in such a context the court is

3

unable to reach the merits of the case.  See e.g., Beazer E., Inc. v. U.S. Navy, 111 F.3d 129, 134 (4th Cir. 1997) (unpublished).

When a defendant argues that a complaint fails to allege facts establishing subject matter jurisdiction, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Kerns v. United States, 585 F.3d 187, 192 (4th Cir.2009). The plaintiff has the burden of proving that subject matter jurisdiction exists.  Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp., 166 F.3d 642, 647 (4th Cir. 1999) (citing Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir.1991)).

Questions regarding the contractual waiver of sovereign immunity can be resolved at the motion to dismiss stage via a Rule 12(b)(1) motion.  See Moody v. Transylvania County, 271 N.C. 384, 388, 156 S.E.2d 716, 719 (1967) ("the plaintiff seeks to recover upon a contract allegedly made by the County Commissioners.  That, without more, raises the question of their authority, and a demurrer seeks an immediate answer."); Data General Corp. v. County of Durham, 143 N.C.App. 97, 545 S.E.2d 243 (2001) (reversing trial court's denial of Rule 12(b)(1) motion to dismiss where plaintiff failed to "make a showing" that the statutorily required preaudit certificate existed pursuant to N.C.G.S. § 159-28(a)); Davis v. City of Greensboro, North Carolina, 770 F.3d 278 (4th Cir. 2014) (affirming denial of defendants' motion to dismiss where

plaintiffs established that the statute requiring a preaudit certificate did not apply); <u>Warnock v. Pecos County Texas</u>, 88 F.3d 341, 343 (5th Cir.1996) (holding that district court's dismissal of plaintiff's claims with prejudice was erroneous because "sovereign immunity deprives the court of jurisdiction, [and thus] the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice"); <u>Falwell v. City of Lynchberg, Virginia</u>, 198 F.Supp.2d 765, 783 (W.D. Va. 2002) ("Because claims that are barred by sovereign immunity deprive federal courts of their subject matter jurisdiction, defendants may move to dismiss such claims against them via Rule 12(b)(1)").

### B. Rule 12(b)(6)

In a motion made pursuant to Rule 12(b)(6), the central issue is whether the complaint states a plausible claim for relief. <u>See</u> <u>Francis v. Giacomelli</u>, 588 F.3d 186, 189 (4th Cir. 2009). In that context, the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. <u>See</u> <u>Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.</u>, 591 F.3d 250, 253 (4th Cir. 2009); <u>Giacomelli</u>, 588 F.3d at 192.

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." <u>Consumeraffairs.com</u>, 591 F.3d at 255; <u>Giacomelli</u>, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the complaint must contain "enough facts to state a claim to relief that is plausible

on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007);
Consumeraffairs.com, 591 F.3d at 255.

"A claim has facial plausibility when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009);
accord Consumeraffairs.com, 591 F.3d at 255. In short, the well-pled factual
allegations must move a plaintiff's claim from conceivable to plausible.
Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

## IV. Discussion

A federal court exercising diversity jurisdiction must apply the
substantive law of the state in which it sits. Volvo Constr. Equip. N. Am., Inc.
v. CLM Equip. Co., 386 F.3d 581, 599–600 (4th Cir. 2004) (citing Erie R.R. Co.
v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Klaxon Co. v.
Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).
Here, both parties rely on North Carolina law in their briefing, and the
Agreement provides that it "shall be construed and enforced in accordance with
the laws of the State of North Carolina." Doc. 25-2 at 15. Accordingly, the
undersigned has considered the Agreement in light of North Carolina law. See
Worley Claims Services, LLC v. Jeffries, 429 F.Supp.3d 146, 155 (W.D.N.C.
2019) ("Under North Carolina choice of law rules, the interpretation of a
contract is governed by the law of the place where the contract was made.

6

However, where parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect.") (internal quotations and citations omitted).

"Under North Carolina law, counties and municipalities retain immunity from suit unless they consent to be sued or waive immunity." AGI Associates, LLC v. City of Hickory, North Carolina, 773 F.3d 576, 578 (4th Cir. 2014) (citing Whitfield v. Gilchrist, 348 N.C. 39, 497 S.E.2d 412, 414 (1998)). This "governmental immunity" can be waived "in three discrete ways: (1) by entering into a valid contract; (2) by acting in a proprietary capacity; and (3) by purchasing liability insurance." Id.

SPC alleges that "[b]y executing the Incentive Agreement, Cleveland County waived its sovereign immunity to the extent of its obligations to SPC under the Incentive Agreement." Doc. 25 at ¶ 74. In the instant Motion to Dismiss, the County argues that it is immune from suit because the Agreement is not a valid contract, and relatedly that SPC cannot rely on estoppel to enforce the Agreement.

A. Validity of the Agreement

"Under the contract theory of waiver, when a county or municipality enters into a valid contract, it has 'implicitly consent[ed] to be sued for damages on the contract in the event it breaches the contract.'" AGI, 773 F.3d at 579

7

(quoting <u>Smith v. State</u>, 289 N.C. 303, 222 S.E.2d 412, 423–24 (1976)); <u>see also</u> <u>Data General Corp. v. County of Durham</u>, 143 N.C. App. 97, 545 S.E.2d 243, 248 (2001) ("[I]n the absence of a valid contract, a state entity may not be subjected to contractual liability.").

### 1.   Nature of the Agreement

An initial question concerns whether the Agreement should be considered to be a unilateral contract or a bilateral one.

The County argues that the Agreement is not a bilateral contract because it includes no bilateral obligations.  Doc. 30 at 7 and 8-9.  SPC does not dispute this position and characterizes the Agreement as a unilateral contract.  <u>See</u> Doc. 32 at 13 n. 3 (stating SPC's position that the Agreement is "a textbook unilateral contract" and that SPC "does not engage the County's arguments" that the Agreement is an unenforceable bilateral contract).

"Under North Carolina law, 'a unilateral contract is defined as a promise by one party, or an offer by him to do a certain thing, in the event the other party performs a certain act ... and ... [the] offeree can accept [the offer] by meeting its conditions.'" <u>Norman v. Loomis Fargo & Co.</u>, 123 F.Supp.2d 985, 988 (W.D.N.C.2000) (quoting <u>White v. Hugh Chatham Memorial Hosp., Inc.</u>, 97 N.C.App. 130, 131–32, 387 S.E.2d 80, 81 (1990)).

8

Here, the Agreement has some trappings of a bilateral contract, such as sections concerning assignment, notice, and waiver/modification. See Doc. 25-2 at 15-16.

At the same time, SPC has no obligation to construct Plant Cleveland at a particular site or invest funds at that site. See Doc. 25-2 at 3 (stating SPC will "potentially construct Power Generation Facilities") and 7 ("The County acknowledges that the Company is not obligated to construct any Generating Facilities on the Site or invest any funds in the Site. Any construction or investment in the Site shall be at the Company's sole discretion."). Likewise, the County has no obligation to make incentive payments unless and until certain conditions are fulfilled by SPC. Specifically, the Agreement provides that no incentive payments are due to SPC until (1) "commercial operations" have commenced at Plant Cleveland; and (2) SPC has paid all taxes and fees imposed by the County. Doc. 25-2 at 10 ("No Incentive Payments shall be due during the period between the Closing Date and the Commercial Operations Date of the Initial Generation Facility…") and 11 ("The Parties agree that no Incentive Payments shall be made unless the Company is current in the payment of all taxes and fees imposed by the County.").

Further, SPC itself alleges in its Amended Complaint that the Agreement is a unilateral contract. See Doc. 25 at ¶ 77.

Accordingly, the Agreement is properly considered to be a unilateral contract. More precisely, when it was signed on July 24, 2007, the Agreement was an offer by the County to enter into a unilateral contract, with SPC's acceptance to be demonstrated through SPC's performance. See State v. Philip Morris USA Inc., 359 N.C. 763, 773, 618 S.E.2d 219, 225 (2005) ("Interpreting a contract requires the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution.")(citing Lane v. Scarborough, 284 N.C. 407, 409-10, 200 S.E.2d 622, 624 (1973)).

2.    N.C.G.S. § 158-7.1(h)

In August 2007 (approximately one month after the parties signed the Agreement and well before SPC's performance), the North Carolina General Assembly amended N.C.G.S. § 158-7.1 of the Local Development Act to include a new subsection – Section H, which provides:

> Economic Development Agreement.--Each economic development agreement entered into between a private enterprise and a city or county shall clearly state their respective responsibilities under the agreement. Each agreement shall contain provisions regarding remedies for a breach of those responsibilities on the part of the private enterprise. These provisions shall include a provision requiring the recapture of sums appropriated or expended by the city or county upon the occurrence of events specified in the agreement. Events that would require the city or county to recapture funds would include the creation of fewer jobs than specified in the agreement, a lower capital investment than specified in the

10

agreement, and failing to maintain operations at a specified level for a period of time specified in the agreement.

N.C. Gen. Stat. Ann. § 158-7.1(h); see also LOCAL DEVELOPMENT—URBAN PROGRESS ZONES— AGRARIAN GROWTH ZONES, 2007 North Carolina Laws S.L. 2007-515 (H.B. 1595)

### a. The Law Governing the Agreement

As a consequence, the next question becomes which law should be applied to the Agreement—the law as it existed at the time the Agreement was executed in 2007, or the law as it existed at the time the Agreement was consummated through SPC's performance some years later.

SPC appears to argue that the Agreement should be analyzed using the law at the time the Agreement was executed. In particular, SPC contends that its completion of the necessary conditions in the Agreement – its acceptance through performance – "related back" to July 24, 2007 such that the later-enacted Section H does not apply. To support this argument, SPC relies on CIM Ins. Corp. v. Cascade Auto Glass, Inc., 190 N.C.App. 808, 812, 660 S.E.2d 907, 910 (2008) (upon the offeree's performance of the requested act, "the contract becomes clothed with a valid consideration, which relates back and renders the promise obligatory.") (quoting Erskine v. Chevrolet Motors Co., 185 N.C. 479, 489, 117 S.E. 706, 710 (1923)).

11

The County disagrees and asserts that "CIM Insurance does not address *when* a contract is formed" but instead "how the concepts of acceptance and consideration apply in the context of formation of a unilateral contract," Doc. 30 at 15-16 (emphasis in original), and that the unilateral offer here remained subject to intervening events. In support of its position, the County relies on Gurvin v. Cromartie, 33 N.C. 174, 179 & 181, 53 Am. Dec. 406 (1850) (explaining that one mode of making a contract is "when one party promises, in consideration that the other will or will not do some act. Then, no mutual promise need be set forth or exist; but it is necessary and sufficient to show the act done" and finding that upon performance, the plaintiff could "claim the compensation agreed on – at least, unless, before any act done by the plaintiff towards performance, the other party had retracted his offer.").

As discussed above, when it was signed on July 24, 2007, the Agreement was an offer to enter into a unilateral contract, which contemplated that SPC's acceptance would be evidenced by SPC's performance.

The record does not contain any indication that the Agreement had been rescinded at the time SPC performed; the County does not make such an argument, and SPC alleges that the County affirmed the offer after the passage of Section H.[1]

---

[1] While the County does not contend that it rescinded the Agreement, it argues, as discussed below, that the passage of Section H rendered any resulting contract illegal.

12

Further, SPC did not accept the offer through its performance of the required conditions before the enactment of Section H. Therefore, prior to such performance, the Agreement constituted only an outstanding offer to enter into a unilateral contract. See Thelen v. Loomis, Fargo & Co., 1:99CV48, 1999 WL 33320438, at * 2 (W.D.N.C. Aug. 9, 1999) (applying North Carolina law to unilateral contract where offer was made in Texas and acceptance occurred in North Carolina and explaining that "[t]he last act leading to contract formation, if one was formed, was done in North Carolina, inasmuch as giving the performance requested is the standard means of acceptance of a unilateral offer."); Wray v. City of Greensboro, 247 N.C.App. 890, 894, 787 S.E.2d 433, 437 (2016) (while an offer is outstanding, "the offeree can accept by meeting its conditions.").

Under these circumstances, the undersigned is persuaded that the law that was in effect at the time of SPC's performance should govern the analysis of the Agreement. See Falk v. Fannie Mae, 367 N.C. 594, 600, 766 S.E.2d 271, 276 (2014) ("As a general matter, therefore, courts must apply the law that is in effect when a contract is formed in any future dispute over the construction of that contract.").

### b. Compliance with Section H[2]

SPC argues that, if the current law applies, the Agreement complies with Section H.

The County concedes that the Agreement complied with the Local Development Act when it was signed in July 2007 but contends that the subsequent passage of Section H in August 2007 rendered any contract that resulted by virtue of SPC's performance illegal. See Doc. 30 at 4 ("[w]hen the parties signed the IDA in 2007, it complied with the Local Development Act.") and 12 ("Though the IDA arguably complied with the Act when the County made its offer, the IDA quickly became illegal."). That is, the County contends that the Agreement does not comply with the requirements of Section H and is therefore invalid.

Section H requires that each economic development agreement entered into between a private enterprise and a city or county clearly state the parties' respective responsibilities and contain provisions regarding remedies for the breach of those responsibilities on the part of the private enterprise. Section H also directs that each agreement shall include a provision requiring the

_____

[2] Neither party has made arguments specifically concerning whether Section H itself applies to the Agreement. That is, the parties do not contest that the Agreement should be considered to be an "economic development agreement" to which Section H applies.

recapture of sums appropriated or expended by a county. A close reading of the Agreement indicates that it does not satisfy these requirements.

First, the Agreement does not require SPC to construct the Plant, Doc. 25-2 at 7 ("The County acknowledges that the Company is not obligated to construct any Generating Facilities on the Site or invest any funds in the Site. Any construction or investment in the Site shall be at the Company's sole discretion.") or require SPC to continue commercial operations once those operations have commenced. Further, the payment of certain taxes and fees by SPC is not an obligation but rather a condition precedent that must be met before the County becomes obligated to make the incentive payments to SPC. Consequently, failure to pay the taxes and fees would not constitute a breach of the Agreement that could subject SPC to liability. See Powell v. City of Newton, 364 N.C. 562, 566, 703 S.E.2d 723, 727 (2010) ("A condition precedent is an event which must occur before a contractual right arises ....") (citations and quotation marks omitted); In re Foreclosure of Goforth Props., 334 N.C. 369, 375, 432 S.E.2d 855, 859 (1993) ("In general, a condition creates no right or duty but is merely a limiting or modifying factor in a contract" and "[b]reach or non-occurrence of a condition prevents the promisee from acquiring a right, or deprives him of one, but subjects him to no liability.").

Relatedly, while the Agreement provides that SPC is not entitled to incentive payments until it (1) has commenced "commercial operations" and

(2) has paid all taxes and fees imposed by the County, Doc. 25-2 at 10 and 11, the Agreement includes no mechanism for the County to recapture sums appropriated or expended by it. SPC argues that the Agreement meets the requirements of Section H because it provides the County with "full financial protection" since the County is not obligated to make any incentive payment unless SPC is current on all taxes and fees imposed by the County. However, "full financial protection" is not the requirement set forth in Section H, and the Agreement does not provide the County with any apparatus by which to recapture the amounts it might pay in the form of incentive payments.

For these reasons, the undersigned must conclude that the Agreement does not comply with Section H and is therefore invalid, and that SPC has failed to establish that the County has waived its sovereign immunity.

### B. Estoppel

Additionally, the County argues that "SPC cannot invoke estoppel to achieve a result that would otherwise be illegal." Doc. 30 at 20.

Governmental entities have "only that power which the legislature has given them," and "[a] contract made by a municipality beyond its power is unenforceable." Bowers v. City of High Point, 339 N.C. 413, 417, 451 S.E.2d 284, 288 (1994) (holding that alleged contracts for early retirement separation allowances using a formula contrary to that authorized by statute were beyond the power of the city to make and therefore could not be enforced against the

16

city); see also Smith v. State of North Carolina, 289 N>C. 303, 322, 222 S.E.2d 412, 425 (1976) ("The State is liable only upon contracts authorized by law."); Wray v. City of Greensboro, 247 N.C.App. 890, 892, 787 S.E.2d 433, 436 (2016) ("a municipality waives governmental immunity only for those contracts into which it is authorized to enter").

Where contracts fail to meet statutory requirements, courts have refused to allow recovery under an equitable theory such as estoppel, reasoning that to do so would "allow a party to obtain a result indirectly that the General Assembly has expressly forbidden." Finger v. Gaston County, 178 N.C.App. 367, 371, 631 S.E.2d 171, 174 (2006); see also Data General, 143 N.C.App. at 104, 545 S.E.2d at 248 ("Data General may not recover under an equitable theory such as estoppel for breach of contract where Durham County has not expressly entered into a valid contract."); Transportation Services of North Carolina v. Wake County Board of Education, 198 N.C.App. 590, 599, 680 S.E.2d 223, 229 (2009) (holding that plaintiff could not use estoppel to enforce a contract that violated statute); Carolina Water Service, Inc. of North Carolina v. Town of Pine Knoll Shores, 145 N.C.App. 686, 689, 551 S.E.2d 558, 560 (2001) ("an agreement which cannot be performed without violation of a statute is illegal and void").

In opposition, SPC asserts that "a governmental entity may be estopped if it is necessary to prevent loss to another and the estoppel will not impair the

17

exercise of governmental powers," and relies on <u>Land-of-Sky Regional Council</u>
<u>v. County of Henderson</u>, 78 N.C. App. 85, 91, 336 S.E.2d 653, 657 (1985) (citing
<u>Washington v. McLawhorn</u>, 237 N.C. 449, 454, 75 S.E.2d 402, 406 (1953)).

The rule that estoppel against a governmental entity may arise in some
circumstances "is, indeed, a fairly well-established one in the State of North
Carolina," however, the rule does "not provide [a basis for estoppel] in *every*
factual circumstance." <u>In re: North Carolina Technological Development</u>
<u>Authority, Inc.</u>, Bankr. No. 03-83278C-11D, 2007 WL 542405 at \* 5 (Bankr.
M.D.N.C. Feb. 16, 2007) (state could not be estopped from pleading *ultra vires*
where court found Governor did not have the authority to convey more property
than was authorized by the Legislature) (collecting cases, emphasis in
original). Significant to SPC's argument, and unlike the present
circumstances, the <u>Land-of-Sky</u> court specifically concluded that there was
evidence that the defendant county had fulfilled the relevant statutory
requirements. <u>See also</u> <u>In re: North Carolina Technological Development</u>
<u>Authority, Inc.</u>, 2007 WL 542405, at \* 5, n. 5 (explaining that in <u>Land-of-Sky</u>,
the court "specifically took note of the fact that the actions subject to an
estoppel were not *ultra vires*").

Accordingly, whether SPC may assert estoppel depends on whether the
Agreement was statutorily authorized and valid. <u>See</u> <u>Davis v. City of</u>
<u>Greensboro, North Carolina</u>, 770 F.3d 278, 285, n. 4 (4th Cir. 2014) (noting that

18

with respect to plaintiffs' equitable and quasi estoppel claims, "[b]ecause the [plaintiffs] have sufficiently alleged the existence of such contracts, their estoppel claims must similarly survive the City's motion to dismiss"); Transportation Services, 198 N.C.App. at 599, 680 S.E.2d at 229 (holding that plaintiff could not use estoppel to enforce a contract that violated statute).

Therefore, the reasoning set forth above with respect to the validity of the Agreement applies equally to SPC's estoppel argument.[3]

In closing, the undersigned is compelled to note that the result recommended here is a harsh one. SPC has alleged that it relied heavily on the Agreement and the County's subsequent and explicit affirmation of it after the Local Government Act was amended. The undersigned, however, has endeavored to analyze properly the facts and the law as they have been presented by the parties. See e.g. Bowers v. City of High Point, 339 N.C. 413, 425, 451 S.E.2d 284, 292 (1994) (explaining that a city cannot be estopped from defending a contract action on the basis that the contract was beyond its

---

[3] Additionally, SPC contends in its briefing that "the County's exercise of its governmental powers is not implicated because the County is engaged in a proprietary function and not a governmental function." Doc. 32 at 26; see also AGI, 773 F.3d at 582 (predicting that "the Supreme Court of North Carolina will hold that immunity from equitable claims may be waived pursuant to the proprietary function theory."). The County does not address SPC's assertion, and in any event, it is not alleged in the Amended Complaint. Further, "[e]conomic development has long been recognized as a proper governmental function." Maready v. City of Winston-Salem, 342 N.C. 708, 723, 467 S.E.2d 615, 624 (1996) (holding that economic incentives to recruit business to North Carolina involve a proper public purpose).

19

authority to make while noting that such rule "[u]ndoubtedly ... entails much hardship" to those dealing with the municipality).

## V. Recommendation

For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that the Motion to Dismiss (Doc. 29) be **GRANTED**, and that SPC's claims against the County be dismissed without prejudice.

.

Signed: January 29, 2021

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).